### EDWARDS v. UNITED STATES.
### No. 3751.

District Court D. Massachusetts.
Aug. 17, 1931.

James H. Duffin and Phipps, Durgin & Cook, all of Boston, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., and John Laurence Hurley, Sp. Asst. U. S. Atty., both of Boston, Mass.

MORTON, District Judge.

The question is whether the plaintiff was totally and permanently disabled on or before July 31, 1919, when the policy lapsed for nonpayment of premiums, or on or before March 9, 1922, to which date the plaintiff claims that the policy was kept alive by reason of unpaid compensation to which the insured was entitled. The government agrees that Edwards has been totally and permanently disabled since October 23, 1925; and he is now receiving $150 a month as compensation.

The cause of the disability is a progressive arthritis. It is a crippling disease which affects the joints. Beginning at a certain point, often in the foot, it gradually extends, involving more and more joints, until the sufferer becomes totally disabled. The disease differs from tuberculosis and many others,

in that its onset does not require hospital treatment. The patient can carry on until prevented by the limitation of motion and the pain which attends the disease.

It is obviously very difficult for witnesses to look back over twelve years at an illness and incapacity which has been progressive during at least half that period and say what the patient's condition was at any given date, or when it was that he became unable to do substantial work. The main reliance in such an inquiry must be placed on documentary evidence or contemporaneous corroboration of a witness' recollection. The plaintiff's statements about his condition made from time to time are also significant.

 The plaintiff was discharged from the army in June, 1919. The discharge stated that he was then in good physical condition. The plaintiff signed his assent to it. From August, 1919, to March, 1920, he worked as a chauffeur for the H. & J. Shoe Company at $120 per month. On March 8, 1920, he was examined by a Bureau doctor and found to have bad feet, but otherwise able to work. In that same week he applied for vocational training and also made an application for compensation in which he mentioned no disability attributable to his service except bad feet. In August, 1921, Dr. Phippen examined him and treated him for boils. Dr. Phippen impressed me as a capable and reliable witness. He says that when Edwards first came to him Edwards did not complain except about the boils and perhaps about his feet. In September, 1921, Dr. Phippen made a careful examination, and diagnosed the case as arthritis which had already affected the joints of the spine, the right hip, the right knee, and the feet. He says that at that time Ewards was not in his opinion able to work. In considering this opinion, it is to be remembered that Edwards did in fact carry on his vocational training as a chemist for almost four years afterwards. Mrs. Edwards, the plaintiff's mother testifies that Dr. Phippen was called in, "shortly after the boy began to become disabled. He (the plaintiff) was going to school to be a chemist and it was after that that his trouble began to get bad. He got around at that time by himself with the help of a cane." I believe that this statement is substantially true.

From 1922 to 1925 the plaintiff took vocational training and received from the government substantial allowances granted in connection therewith. His undertaking it amounts to a strong assertion by him that he did not regard himself as totally disabled. Moreover, he had been in the Naval Hospital at Chelsea in February, 1922, and was carefully examined there. The report says: "Patient was at his worst last June. Since that time condition has improved," and that vocational training "is feasible." This report shows careful study of the case, and is weighty evidence as to the plaintiff's condition at that time. It negatives total disability. Ability to study and take training is the legal equivalent of ability to work; one who can do it is not totally disabled.

I am not called upon to determine the exact date on which the disability caused by the disease became total. But I think the clear facts show that the plaintiff was far from being totally disabled either on the date when the policy lapsed, or on the later date, March 9, 1922, set up in the plaintiff's last amendment. There must be judgment for the defendant.

Judgment for defendant.